## Monroe's Estate

The facts appear from the adjudication of

HENDERSON, J., Auditing Judge.—The decedent died on July 24, 1930, unmarried and without issue, leaving a will dated June 20, 1930, duly admitted to probate, whereby, after directing the payment of her debts and funeral expenses and the erection of a headstone, she gave her residue in equal shares to The Frederick Douglass Hospital, The Mercy Hospital and the Priscilla White Home, and she appointed the accountant and his wife executors. Testatrix further directed that "the house and furniture" be sold.

A copy of the will is attached.

Letters testamentary issued to the accountant July 29, 1930; proof of advertisement of the grant of letters was submitted to me and is attached.

The payment of transfer inheritance tax, $416.46 on $4164.61 on March 10, 1931, was duly vouched. Counsel for the Commonwealth presented a claim for additional tax on such items as were not submitted to the state appraiser. This is a proper claim and is allowed, and such additional tax as may be due the Commonwealth, if any, is awarded to the register.

The account contains an item of credit of $991, representing a payment to William Allmond, Jr., for funeral expenses. On behalf of the Julia White Priscilla Home, Mrs. Alexander stated that, although she thought the charge was excessive, her client had directed her to raise no objection thereto. Mr. Sparks, representing The Frederick Douglass Memorial Hospital, requested that Mr. Dickerson make a statement for the record as to the wishes of the decedent respecting her funeral, whereupon Mr. Dickerson did so and Mr. Sparks then expressed his approval of the item.

Mr. Asbury, representing the other residuary legatee, The Mercy Hospital, stated he would approve the item if, upon examination of the undertaker, Mr. Allmond, he found that the price of $565, charged for the "statuary bronze finished metal casket," which is not bronze but steel, and of $200 charged for the "steel burglar proof grave vault," were the list prices charged by the casket company therefor. Accordingly, the hearing was adjourned to permit an investigation by counsel of these charges.

At the adjourned meeting a representative of the Boyertown Casket Company, H. S. Kimmey, testified that the casket was purchased by Mr. Allmond, the undertaker, for $100 and the vault for $68. In view of this information, showing a very great difference between the amounts paid the casket company by the undertaker and the amounts charged by him to the estate, Mr. Asbury pressed his objection.

Mr. Dickerson, on behalf of the executor, contended that, inasmuch as the executor had contracted with the undertaker before the funeral for the arti-

cles furnished, and, therefore, acted in good faith in the payment of his bill, he should not be surcharged, even assuming the undertaker had grossly overcharged the estate; and further contended that the undertaker should be compelled to refund.

Mr. Dickerson further relied upon the admitted fact that the decedent had expressly stated as early as twenty years prior to her death that she wanted William Allmond to bury her when she died, and it was also conceded that the decedent wanted the particular type of funeral furnished and the particular casket and vault supplied. In other words, it may be assumed that the decedent wanted a dignified funeral, and in her appointment of the accountant and his wife as executors testatrix directed that her affairs were "to be attended to by" them and "no others." It will thus be seen that testatrix placed great confidence in her executors.

The estate is approximately $6800 in value; the decedent was employed as a cook in the household of Lucretia Shoemaker, who is a witness to her will; she was unmarried, had no dependents and the rights of creditors are not involved. The question, therefore, narrows itself to whether an executor should be surcharged under all these facts for the payment of a grossly exorbitant charge.

I have reached the conclusion that the undertaker should be allowed a profit of 100 per cent. on the casket and vault, and the balance of the charge for these two items must be disallowed.

| | |
|---|---|
| The charge for the casket and vault was................... | $765 |
| Their cost and 100 per cent. profit would be.............. | 336 |
| Balance....................................... | $429 |

While no objection was made to other items in the undertaker's bill, I asked him to justify his charge of $25 for embalming the body, and he replied it was done by a man to whom he paid $30 per week.

Mr. Allmond, the undertaker, refused to adopt my suggestion that he refund the gross overcharge.

My pen cannot remain silent in face of the great injustice that has been perpetrated by a man of education upon those of his race. He is licensed by the state, and the undertakers' code requires him to have had a complete high school course and to be "of good moral character: . . ." Act of April 25, 1929, P. L. 772.

This case should be called to the attention of the State Board of Undertakers.

The executor is in an unfortunate position, but his failure to exercise ordinary business acumen in the performance of his duty must subject him to surcharge. Indeed, the scrutiny of claims and his vigilance and celerity in opposing unjust and unconscionable demands are essential and important elements of his fiduciary position, and it is for the proper discharge of such duties that he receives his compensation. Certainly, no justification can be offered for the charge of $565 for a casket costing $100, or the charge of $200 for a vault costing $68.

*G. Edward Dickerson*, for exceptant; *J. C. Asbury*, contra.

SINKLER, J., February 26, 1932.—Of the fourteen exceptions to the adjudication twelve relate to alleged errors of the auditing judge in surcharging the accountant $429 on account of the payment of an excessive bill for funeral expenses, growing out of exorbitant prices realized by the undertaker upon the burial casket and grave vault. Almost invariably in cases of this

character the question involved is whether the amount is excessive in respect of the station in life of the decedent and size of the estate: D'Allessandro's Estate, 16 D. & C. 113. In the present case this question is of secondary importance because of directions respecting her funeral, given during her lifetime by testatrix. This, however, does not give the executor carte blanche in his expenditures, nor justify him in paying exorbitant prices.

The things furnished must be reasonable in price and reasonably necessary: Ennis's Estate, 29 Dist. R. 758, affirmed in 76 Pa. Superior Ct. 292. The finding of the auditing judge in this respect likewise is not to be set aside unless there is, in our opinion, abuse of discretion. The prices allowed by him to the undertaker do not disclose abuse of his judicial discretion. Neither the confidence reposed by the testatrix in her executor nor the fact that he contracted with the undertaker before the funeral relieve him from liability for paying an excessive price for the casket and vault. It is argued that the testatrix placed great confidence in her executor. This fact may give broad discretion to him in the exercise of his duties as fiduciary, but does not lessen his responsibility to use due care and diligence.

The last two exceptions recite that the auditing judge erred in failing to compel the undertaker to refund the excessive amount and in failing, of his own motion, to issue a citation to the undertaker to show cause why he should not refund the excessive amount to the accountant. The auditing judge had no power to do so.

We have given thorough consideration to the merits of the controversy and are one in opinion that the adjudication should be upheld.

All exceptions are accordingly dismissed and the adjudication is confirmed absolutely.